UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICKY ALLEN NORWOOD,

    Petitioner,

v.
                              Case No. 1:06-cv-429
                              Hon. Robert J. Jonker

THOMAS K. BELL,

    Respondent.
_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**    **Background**

A jury convicted petitioner of second-degree murder, M.C.L. § 750.317, in connection with the beating death of his three-year-old granddaughter. *People v. Norwood*, No. 226167(Mich. App. Dec. 6, 2002). Petitioner was sentenced to 18 to 54 years imprisonment. *Id.*, slip op. at 1. The Michigan Court of Appeals summarized the facts as follows:

> On October 1, 1996, the victim and her four siblings, all between the ages of eleven months and seven years, were living with defendant (their grandfather) and his wife, Dolly Norwood. Defendant and his wife were approved foster care parents for the children. Direcca Norwood, the sixteen-year-old daughter of defendant and his wife, and defendant's mother-in-law also lived in the home. As part of the foster care contract with the Family Independence Agency (FIA), defendant agreed to refrain from physically punishing the children. Notwithstanding the agreement, defendant beat the children with a belt at times. He testified that he believed that they were "a little wild" and did so in order to instill discipline in them.
>
> After dinner on the evening the victim was murdered, defendant's grandchildren took their baths and dressed in their night clothes. Thereafter, the oldest child went into a back room to read a book while the victim and her two

brothers went to the living room to watch television. When the victim came into the living room, defendant noticed that her green Teletubby slippers were on the wrong feet. Defendant pointed this out and tried to teach her how to put them on correctly. They practiced numerous times, and when the victim put them on properly, defendant praised her. The victim, however, made a number of mistakes and eventually defendant threatened the victim, telling her that if she did not put the slippers on correctly, he would get his belt. Over a period of approximately one hour, whenever the victim failed to put the slippers on correctly he struck her with the belt. Defendant did not know how many times he hit the victim. At times, the victim ran from defendant but he chased her and brought her back to the living room. Defendant testified that the victim never cried. When defendant's wife told him to leave the victim alone, he stopped hitting her. The victim crawled on the couch and eventually became sleepy. About midnight, defendant put her to bed on a makeshift mattress in his bedroom. Defendant claimed that he did not realize the victim was badly injured because she did not act as if anything was wrong.

At approximately 3:00 a.m., defendant checked on the victim and realized that something was wrong. 911 was called, but when paramedics arrived the victim was dead. It was apparent to emergency personnel that she had been severely beaten. Defendant told police that he did not mean to kill the child or to harm the child, but he readily admitted that he "tanned" the child "really good" because the victim would not put her slippers on properly and would not listen to him. Defendant also admitted that he was frustrated with the child, not only because of her failure with respect to the slippers but because she generally would not talk to him or his wife. Responding police and paramedic personnel testified that defendant was disinterested and showed no emotion at first. Eventually, however, he became nervous and began pacing and smoking.

The forensic pathologist who conducted the autopsy testified that the victim suffered extensive bruising and scraping over her body, including to her face, head, chest, abdomen, back, arms, legs and buttocks. She also had extensive scarring from prior trauma. Several areas of bruising were continuous. For example, the back of the victim's left leg revealed one continuous bruise from the buttock down to the ankle. While it was impossible to determine how many times the child was struck in order to create the continuous bruising, the pathologist counted the continuous bruises as one strike to be conservative. Counting in this conservative manner, he found forty-six separate, fresh injuries, indicating a minimum of forty-six blows. Some of the injuries were consistent with the skin being struck by part of a belt buckle.

The pathologist also testified that a considerable amount or substantial degree of force was used and that the force was vigorously applied. While all of the injuries were to the fatty tissues of the body, the victim died because bruises generally hemorrhage and the beating was so extensive that the victim lost a great amount of

blood. The victim was "literally beaten to death." The massive internal hemorrhage caused lack of adequate blood supply to the brain and, the victim's vital functions eventually ceased. It took between thirty minutes and four hours for the victim to die. After the beating, the victim would have been lethargic and sleepy and she eventually slipped into a coma.

Defendant was charged with second-degree murder. Defendant argued at trial that he was guilty of manslaughter and not second-degree murder, contending that the victim's death was accidental, that he did not realize his conduct could cause death or bodily harm, that he did not intend death or great bodily harm, and that he was, at most, grossly negligent. He also pointed out that he spanked his own children when they were growing up and that he previously spanked his grandchildren but that his prior actions never caused a death.

*Id.*, slip op at 1-2.

Petitioner presented the following issues in his direct appeal to the Michigan Court of Appeals:

I.  Was the evidence presented by the prosecution insufficient to sustain a jury verdict of guilty on the charge of second degree murder, M.C.L. § 750.317?

II. Did trial counsel make serious mistakes that denied [petitioner] effective assistance of counsel, where he: failed to properly investigate the case and prepare for trial, failed to object to improper evidence or effectively cross-examine prosecution witnesses, failed to provide any evidence or witnesses on behalf of [petitioner] and failed to provide any rational defense to the second degree murder charge?

III. Was [petitioner] denied his right to a fair trial under the Michigan and Federal Constitutions by the intentional prosecutorial misconduct where:

   A. The prosecutor interjected improper and highly prejudicial testimony and exhibit, regarding a Family Independence Agency agreement of "no physical discipline," that effectively portrayed [petitioner] to the jury as a "bad man" who should be convicted of the instant charge?

   B. The prosecutor engaged in improper and highly

3

>                    prejudicial argument to the jury where he interjected
>                    irrelevant issues, mischaracterized the evidence,
>                    misstated the law and appealed to the sympathy of the
>                    jurors for the victim as a basis to convict?
>
> IV.     Did the trial court err reversibly in failing to give the jury a final
>         cautionary instruction regarding the out of court statements of
>         defendant, CJI 2d 4.1, and failed to instruct on [petitioner's] theory
>         of the case?
>
>         A.     Was counsel ineffective for failing to insure that the
>                trial court gave the jury proper final instructions?
>
> V.      Did the trial court improperly assess [petitioner] 100 points for OV-3
>         and 5 points for OV-17 resulting in his sentence being based upon a
>         grossly inaccurate sentencing range and increase of [petitioner's] OV
>         level from II to III?
>
>         A.     Was counsel ineffective for failing to insure the
>                accurate scoring of the sentencing guidelines offense
>                variables?

*See* Brief on Appeal (docket no. 18).

The Michigan Court of Appeals affirmed the conviction, but remanded for re-sentencing, stating in pertinent part:

> Defendant finally argues that the trial court improperly assessed one hundred points for OV-3 and five points for OV-17, which resulted in an inaccurate sentencing guidelines range being used at sentencing. The prosecution agrees that defendant was improperly assessed one hundred points for OV-3, which provides that the points should be assessed only where homicide is not the sentencing offense. M.C.L. § 777.33(2)(b). Further, the prosecution concedes that defendant should not have received five points for OV-17, which is scored only if the conviction involves the operation of a vehicle. MCL 777.22(1). Defendant failed to object to these scoring deficiencies at sentencing and failed to properly move for resentencing or remand. Thus, our review of these unpreserved scoring issues is for plain error. *People v. Kimble*, 252 Mich. App 269, 275-276; 651 NW2d 798 (2002).
>
> We find plain error requiring resentencing. Defendant's guidelines range was improperly calculated based on the undisputed scoring errors. The correct range is 90 to 150 months, not 162 months to 270 months. MCL 777.61. Thus, defendant was sentenced on the basis of an improper guidelines range. This is plain error

requiring remand for resentencing.

*People v. Norwood*, No. 226167, slip op. at 11.[1] Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court. *See* docket no. 29. The Michigan Supreme Court denied petitioner's application. *People v. Norwood*, No. 122980 (Mich. June 30, 2003).

On remand, the trial court re-sentenced petitioner to 16 to 48 years (192 months to 576 months) imprisonment. Re-sentencing Trans. at 50 (docket no. 17). The court determined this new sentence based upon a re-calculation of the sentencing guidelines. While the court deleted the erroneous scores for OV-3 and OV-17, it increased the score for other variables, which resulted in a guidelines range of 144 to 240 months. *Id.* at 41-43. Petitioner appealed the re-sentencing, raising three issues:

> I. Was there an error requiring resentencing and was [petitioner's] right to due process violated when the trial judge, on re-sentencing, exceeded the specifically limited scope of the Court of Appeals remand order to sentence [petitioner] within the 90 to 150 months range based upon criteria that was known to all parties at the first sentencing?
>
> II. Must [petitioner] be resentenced, and did the trial court violate [petitioner's] right to due process where the sentencing guidelines were misscored, and his minimum sentence was a departure from the correctly scored guidelines?
>
> III. Is [petitioner] entitled to resentencing because the sentencing guidelines range was enhanced by the scoring of Offense Variables 1, and 6 on the basis of facts not proven to a jury beyond a reasonable doubt nor admitted by [petitioner], in violation of the Sixth and Fourteenth Amendments?

Application for leave to appeal (docket no. 20). The Michigan Court of Appeals denied the

---

[1] Under Michigan's indeterminate sentencing system, the "sentencing guidelines range" refers to the minimum sentence. *See* M.C.L. § 769.34(2); *People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231 (2003).

application.  *People v. Norwood*, No. 259427 (May 23, 2005).  Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied. *People v. Norwood*, No. 129011 (Oct. 31, 2005).  Now, petitioner has raised these three issues arising from his resentencing as grounds for habeas relief.

### III.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### IV. Petitioner's habeas claims

#### A. Petitioner's re-sentencing did not comply with the sentencing guidelines range as announced by the Michigan Court of Appeals (Issues I and II)

In his first two habeas issues, petitioner contends that the trial court failed to follow the sentencing range and scoring as set forth by the Michigan Court of Appeals in its 2002 opinion. In Issue I, petitioner contends that the Court of Appeals limited his minimum sentence to between 90 to 150 months, that the "law of the case" barred the trial court from re-calculating this range, and that the prosecution improperly challenged other offense variables (i.e., OV-1, OV-6, OV-7 and OV-10) on remand. *See* Petitioner's appellate brief (docket no. 20). In Issue II, petitioner contends that the trial court misscored the sentencing guidelines on remand, by assessing points for his use of the

7

belt as a "weapon" under OV-1 (aggravated use of a weapon) and assessing points for "excessive brutality" under OV-7 (aggravated physical abuse). Resentencing Trans. at 25-31, 35-41.

These two claims do not present issues cognizable under § 2254. Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of petitioner's prison term. *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68. *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).

Petitioner's characterization of the state trial court's application of the sentencing guidelines as a denial of due process does not transform his state law claim into a federal constitutional claim. *See, e.g., Austin*, 213 F.3d at 301(in rejecting petitioner's claim that the trial court's departure from the sentencing guidelines violated his federal due process rights during sentencing, the court noted that petitioner failed "to articulate the grounds upon which the trial court's departure from the Michigan Sentencing guidelines violates any federal due process right he possesses," and was "unable to substantiate a single violation of any of his constitutional guarantees to due process"); *Felicetty v. Bianco*, No. Civ. A. 02-585-JJF, 2003 WL 21402544 at *6 (D. Del. June 10, 2003) (observing that a state court's sentencing decision is generally not

constitutionally cognizable, even if the claim is couched in terms of a due process violation).

Similarly, the question of whether the state trial court followed the appellate court's instructions on remand is one of state law. *See People v. Fisher*, 449 Mich. 441, 447, 537 N.W.2d 577 (1995) ("the doctrine of the law of the case has no application where a case is remanded without directions to the lower court; in such a case the lower court would enjoy the same power as if it made the ruling itself"); *People v. Canter*, 197 Mich. App. 550, 567, 496 N.W.2d 336 (1992) ("[w]hen a case is remanded by an appellate court, proceedings on remand are limited to the scope of the remand order"). In its December 6, 2002 opinion, the Michigan Court of Appeals did not instruct the trial court to resentence petitioner at the lower guideline range of 90 to 150 months. Rather, the Michigan Court of Appeals noted the errors in scoring OV-3 and OV-17, determined that the appropriate guideline range as properly calculated was 90 to 150 months rather than 162 months to 270 months, and "remanded for resentencing." *People v. Norwood*, No. 226167, slip op. at 11. Neither the trial court, the Michigan Court of Appeals, nor the Michigan Supreme Court construed the December 6, 2002 opinion and order of remand as limiting the scope of the remand to a resentencing based upon the undisputed scoring errors and the lower guideline range.

This court will not review the Michigan Court's decisions regarding the scope of the Michigan Court of Appeals' order of remand. The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. As the Sixth Circuit observed in *Roddy v. Black*, 516 F.2d 1383 (6th Cir. 1975):

> The Great Writ is not an instrument which the federal courts may employ at will to reverse state criminal convictions. Rather it is the means by which federal courts

may undo "restraints contrary to our fundamental law, the Constitution."

*Roddy*, 516 F.2d at 1383, *quoting Fay v. Noia*, 372 U.S. 391, 409 (1963). To grant the relief sought by petitioner would be tantamount to this court overruling the ultimate expositor of state law.

Accordingly, these two claims for habeas relief challenging the calculation of the sentencing guidelines should be denied.

> **B. Petitioner's sentence was enhanced by facts not proven to a jury beyond a reasonable doubt (Issue III)**

Finally, petitioner contends that his sentence violates the rule set forth in *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* involved the State of Washington's determinate sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court held that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely*, 542 U.S. at 301 (*citing Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Relying on *Blakely*, petitioner claims that the sentencing guidelines range was enhanced by the scoring of offense variables on the basis of facts not proven to a jury beyond a reasonable doubt. *Blakely*, however, is inapplicable to petitioner's sentence in this case. Petitioner's sentence of 16 to 48 years was within the maximum possible sentence for the crime of second-degree murder, which carried a punishment of "imprisonment in the state prison for life, or any term of years." M.C.L. § 750.317. Unlike the State of Washington's determinate sentencing system, the

10

State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan*, 475 Mich. 140, 160, 715 N.W.2d 778 (2006) (*citing* M.C.L. § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 469 Mich. 247, 255 n. 7, 666 N.W.2d 231 (2003) (*citing* M.C.L. § 769.34(2)). Therefore, under Michigan law, the trial judge sets the minimum sentence (within a certain range), but can never exceed the maximum sentence. *Drohan*, 475 Mich. at 160. Because the trial court can never exceed the maximum sentence set by statute, Michigan's indeterminate sentencing scheme, unlike the determinate sentencing scheme at issue in *Blakely*, does not infringe on the province of the finder of fact, and, thus, does not violate *Blakely*. *See Blakely*, 542 U.S. at 304-05, 308-09; *Brown v. Jones,* 5:05-cv-166, 2009 WL 559869 at *15 (W.D. Mich. March 4, 2009); *Lipsey v. Bell*, 1:08-cv-60, 2008 WL 1836953 at *4 (W.D. Mich. April 22, 2008) (listing cases).

### V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: May 5, 2009                                                  /s/ Hugh W. Brenneman, Jr.
                                                                             HUGH W. BRENNEMAN, JR.
                                                                             United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).